UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, and APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND, and CARPENTER CONTRACTOR ALLIANCE OF METROPOLITAN NEW YORK,<br><br>                              Plaintiffs,<br><br><br>        -v-<br><br><br><br>PRIME INSTALLATIONS INC. and G & S CONCEPTS, INC.,<br><br>                              Defendants. | 24-CV-8250 (LGS) (RFT)<br><br>**REPORT & RECOMMENDATION** |

**TO THE HONORABLE JUDGE LORNA G. SCHOFIELD, UNITED STATES DISTRICT JUDGE:**

Pending before me is a damages inquest in connection with the default by Defendants Prime Installations Inc. ("Prime") and G&S Concepts, Inc. ("G&S") on the claims against them in this matter by Plaintiffs Trustees of the New York City District Council of Carpenters Pension, Welfare, Annuity, and Apprenticeship, Journeyman Retraining, Educational and Industry Funds (the "ERISA Funds"), Trustees of the New York City Carpenters Relief and Charity Fund (the "Charity Fund"), and Carpenter Contractor Alliance of Metropolitan New York (the "CCA," together with the Charity Fund and the ERISA Funds, the "Funds"), under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and 28 U.S.C. §§ 2201 and 2202. Plaintiffs' claims arise out of Defendants' violation of the parties' collective bargaining agreement ("CBA"). (*See* ECF 42, Default J. Order.)

Plaintiffs seek $635,849.48, plus post-judgment interest at the statutory rate. This amount consists of (a) $612,566.92 in damages; and (b) $23,292.56 in attorneys' fees and costs. (*See* ECF 45, Prop. Findings of Fact and Con. of Law ("PFOF") ¶¶ 60, 93.) For the reasons set forth below, I respectfully recommend that judgment be entered in Plaintiffs' favor against Defendants, with Plaintiffs to be awarded $**624,635.58,** consisting of (a) **$612,566.92** in damages and (b) **$12,068.66** in attorneys' fees costs.

**BACKGROUND**

I.      **Factual Background**[1]

Defendant Prime was a member of the Building Contractors Association, Inc. (the "Association") (*see* ECF 32-1, Prime's Proof of Membership at 1, 7) and was therefore bound by the CBA between the Association and the New York City District Council of Carpenters (the "Union"). (*See* ECF 1, Compl. ¶ 9; ECF 45, PFOF ¶ 6.) Defendant G&S was and is an alter ego, successor, and/or single employer of Prime and therefore subject to the CBA's terms. (*See* ECF 45, PFOF ¶¶ 43-49.) The CBA provides that each Defendant is jointly and severally liable for the other's unpaid contributions and obligations. (*See* ECF 32-2, CBA Art. X, §§ 1-3 (establishing the joint venture); *see also* ECF 42, Default J. Order at 2-3 (finding that the Complaint adequately alleges that each Defendant is jointly and severally liable for the other's debts and obligations pursuant to the CBA and ERISA).)

---

[1]     Unless otherwise indicated, I draw the facts relating to liability from the Complaint (ECF 1) and the PFOF (ECF 45).

2

The CBA required Prime to pay benefit contributions to the Funds at hourly rates specified in the CBA for every hour of work performed by Prime employees in the trade and geographical jurisdiction of the Union ("Covered Work"). (*See* ECF 45, PFOF ¶ 7; ECF 32-2, CBA Art. XVII § 1.) The Covered Work included work in this District. (*See* ECF 32-2, CBA Art. IX.) The CBA also bound Prime to the Funds' Collection Policy, which required Prime to furnish the Funds with its books and records for auditing and verifying compliance. (*See* ECF 45, PFOF ¶ 10; ECF 33-1, Collection Policy § IV; ECF 32-2, CBA Art. XVII § 1.) In the event of a default judgment, Prime must pay the Funds

> in accordance with the judgement of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following: (1) the unpaid contributions; plus (2) interest on the unpaid contributions determined at the prime rate of Citibank plus 2%; plus (3) an amount equal to the greater of – (a) the amount of the interest charged on the unpaid contributions as determined in above, or (b) liquidated damages in the amount of 20% of the amount of unpaid contributions; plus (4) reasonable attorneys' fees and costs of the action; and (5) such other legal or equitable relief as the court deems appropriate.

(*See* ECF 32-2, CBA Art. XVII § 6.)

The Funds conducted an audit covering December 28, 2020 to December 25, 2022 (the "Audit"), which identified delinquent contributions of $479.419.05. (*See* ECF 45, PFOF ¶ 32; ECF 33-2, Audit at 1.) After Prime failed to remit the amounts required based on the findings of the Audit, the Funds initiated arbitration in accordance with the CBA's arbitration clause. (*See* ECF 32-2, CBA Art. XVII § 7.) On October 12, 2023, the arbitrator ordered Prime to pay the Funds $626,503.05 (the "Prime Arbitration Award"). (*See* ECF 3-3, Oct. 12, 2023 Award at 3.) On January 19, 2024, after the Funds filed a petition to confirm the Arbitration Award in this Court in *Trustees of the New York City District Council of Carpenters Pension Fund, et al. v. Prime Installations Inc.*, 23-CV-10349 (AS) ("*Prime Installations*"), judgment was entered against Prime

3

in the amount of $649,874.63 (the "Prime Judgment")[2] plus post-judgment interest. (*See* ECF 45, PFOF ¶ 60.) *See also Prime Installations,* 23-CV-10349, ECF Doc. No. 15 (Order and J. of Jan. 19, 2024).

On January 23, 2025, Prime paid $37,307.71 toward the amount owed. (*See* ECF 34, First Declaration of Maura Moosnick ("First Moosnick Decl.") ¶ 9; PFOF ¶ 41.) On January 29, 2024, Prime ceased operations and filed a Deed of Assignment for the Benefit of Creditors in the Chancery Division in the Ocean County, New Jersey Superior Court (the "New Jersey Proceeding"). (*See* ECF 1, Compl. ¶ 23; ECF 45, PFOF ¶ 38.) On April 23, 2024, Plaintiffs filed proof of claim in the New Jersey Proceeding for the Prime Judgement. (*See* ECF 1, Compl. ¶ 23; ECF 45, PFOF ¶ 39.) At the time of commencement of this action, the New Jersey Proceeding was still pending and at no point did Prime seek a stay of all proceedings against it. (*See* ECF 1, Compl. ¶ 25; ECF 45, PFOF ¶ 40.)

Plaintiffs request $612,566.92 in damages, which represents the outstanding amount owed to Plaintiffs under the Prime Judgment, plus $23,292.56 in reasonable attorneys' fees and costs for this action, as well as post-judgment interest. (*See* ECF 45, PFOF ¶¶ 95-98.)

---

[2]    The Prime Judgement consists of an award of $626,503.05; plus interest of $16,143.18, which was calculated at an annual rate of 9.5% from October 12, 2023 (the date of the Prime Arbitration Award) until January 19, 2024 (the date of the Prime Judgement); $7,068.00 in attorneys' fees; $160.40 in costs; and post-judgment interest at the statutory rate. *See Prime Installations,* 23-CV-10349, ECF Doc. No. 15 (Order and J. of Jan. 19, 2024).

II.    **Procedural History**

On October 30, 2024, Plaintiffs filed the Complaint against Prime and G&S to collect the unpaid balance of Prime Judgement, plus attorneys' fees, pursuant to Sections 502 and 515 of ERISA and Section 301 of the LMRA. (*See generally* ECF 1, Compl.) Plaintiffs included G&S on the Complaint on the basis of its status as Prime's alter ego, which is bound by the CBA and jointly and severally liable for Prime's debts and obligations pursuant to the CBA. (*See* ECF 32-2, CBA Art. X §§ 1-3.) Plaintiffs filed affidavits of service indicating that G&S was served on November 13, 2024 and that Prime was served on November 27, 2024. (*See* ECF 8, G&S Aff. of Serv.; ECF 12, Prime Aff. of Serv.)

On January 7, 2025, the Clerk of the Court entered a Certificate of Default against Defendants for failure to answer or otherwise defend this action. (*See* ECF 17, Clerk's Certif. of Def.) No attorneys appeared or responded on behalf of G&S or Prime. (*See* ECF 21, Order at 1.) On February 4, 2025, pursuant to Fed. R. Civ. P. 55(b)(2) and Rule 55.2(b) of the local Rules of this Court, Plaintiffs moved for entry of default judgment against Defendants. (*See* ECF 37, Prop. Default J.)

On February 20, 2025, Your Honor entered an Order of Default Judgment: (1) finding that the Court has personal and subject matter jurisdiction; (2) finding that the Complaint adequately alleges that G&S is bound by the CBA and is jointly and severally liable for Prime's debts and obligations pursuant to the CBA and that G&S is Prime's alter ego; (3) declaring that Defendants are alter egos, successors, and/or constitute a single employer, such that both Defendants are bound by the CBA and are jointly and severally liable for each other's debts and obligations under the CBA and ERISA; (4) awarding Plaintiffs an amount to be determined by me

5

in a damages inquest; and (5) directing G&S to submit to an audit of its books and records by Plaintiffs for the period of October 18, 2018 through present and allowing Plaintiffs thirty days from the completion of the audit to make further submissions to the Court regarding damages revealed by that audit. (ECF 42, Default J. Order.)

On February 20, 2025, Your Honor referred the case to me for a damages inquest. (ECF 41, Order of Ref.) On March 3, 2025, I directed Plaintiffs to file their PFOF concerning all damages and other monetary relief permitted in connection with a judgment against Defendants by March 24, 2025. (ECF 43, Inquest Order.) In response to my Order, Plaintiff's filed a letter indicating the prior submissions they wished to rely on to satisfy the jurisdictional and liability requirements (ECF 44); the PFOF (ECF 45); and a declaration in support of the PFOF with accompanying exhibits pertaining to the attorneys' fees sought (ECF 46, Second Declaration of Maura Moosnick ("Second Moosnick Decl.")).

On March 2, 2026, Plaintiffs filed a Motion To Compel Defendant G&S to produce its books and records for inspection as required by the Court's Order of Judgment entered on February 20, 2025 and for reasonable costs and attorneys' fees associated with that motion. (*See* ECF 48, Mot. To Compel.) In support of their Motion to Compel, Plaintiffs filed a memorandum of law (ECF 50), a third declaration by Maura Moosnick ("Third Moosnick Decl.") and accompanying exhibits pertaining to their demands for audit compliance and billing for the motion to compel (ECF 49), and a certificate of service (ECF 51, Cert. of Serv.).

**LEGAL STANDARDS**

I.    **Obtaining a Default Judgment**

Rule 55 of the Federal Rules of Civil Procedure establishes the two steps to obtain a default judgment. *See generally* Fed. R. Civ. P. 55. When "a party against whom . . . relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).[3] When the amount sought is not certain, or cannot be made certain by computation, the party seeking relief must apply for a default judgment. *See* Fed. R. Civ. P. 55(b)(2). To enter judgment, the court may conduct hearings or make referrals to (1) conduct an accounting, (2) determine the amount of damages, (3) establish the truth of any allegation, or (4) investigate any other matter to enter or effectuate judgment. *See id*. "[T]he court may . . . enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

II.    **Determining Liability and Damages**

A defendant in default "admits the well-pleaded factual allegations in a complaint," and the Court is "required to determine whether the plaintiff's allegations are sufficient to establish . . . liability as a matter of law." *Cummings v. Quick Start Day Care Ctr. Inc.*, No. 23-CV-5244 (LJL), 2024 WL 68552, at *2 (S.D.N.Y. Jan. 5, 2024); *see also City of New York v. Mickalis Pawn*

---

3    Unless otherwise indicated, this report and recommendation omits internal quotation marks, citations, and alterations from quoted text.

7

*Shop*, *LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations in the complaint."). Given Defendant's default, I accept as true all well-pleaded factual allegations in the Complaint (ECF 1), except as to damages. I also rely on the PFOF and the declarations and attached exhibits submitted by Plaintiffs. (*See* ECF 45, PFOF; ECF 19, Declaration of William Davidian ("Davidian Decl."); ECF 20, First Declaration of Adrianna R. Grancio ("First Grancio Decl."); ECF 34, First Moosnick Decl.; ECF 46, Second Moosnick Decl.) Your Honor found that Plaintiffs had adequately shown Defendants are alter egos, successors, and/or constitute a single employer, such that both Defendants are bound by the CBA and are jointly and severally liable for each other's debts and obligations under the CBA and ERISA (*see* ECF 42, Default J. Order at 2), and, as set forth below, that conclusion is borne out by the filings on this inquest. *See infra* Part II.A.

"Once liability has been established, a plaintiff must provide admissible evidence establishing the amount of damages with reasonable certainty." *Reisman v. Ne. Power & Gas LLC*, 720 F. Supp. 3d 279, 291 (S.D.N.Y. 2024). The district court is not obligated to accept the plaintiff's statement of damages during the inquest because a defendant defaults. *See Ramgoolie v. Ramgoolie*, No. 22-1409, 2024 WL 4429420, at *4 (2d Cir. Oct. 7, 2024) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)). The court must determine the appropriate damages based on the evidence, because "[a] plaintiff's statement . . . of damages alone does not provide the requisite reasonable certainty." *RGI Brands LLC v. Cognac Brisset-Aurige, S.a.r.l.*, No. 12-CV-1369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013) (citing *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010)), *report and recommendation adopted*, 2013

8

WL 4505255 (S.D.N.Y. Aug. 23, 2013); *Agbaje v. Bah*, No. 09-CV-6201 (DLC) (RLE), 2010 WL 6370541, at *3 (S.D.N.Y. Dec. 23, 2010), *report and recommendation adopted*, 2011 WL 1197641 (S.D.N.Y. Mar. 25, 2011). If a plaintiff fails to demonstrate its damages with reasonable certainty, the court should decline to award damages despite a finding of liability through default. *See Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012).

The court proceeds without a hearing if no party requests a hearing and damages can be resolved on the submissions and prior proceedings. *See Bricklayers & Allied Craftworkers Local 2*, 779 F.3d at 189 (holding that Fed. R. Civ. P. 55(b)(2), which governs the determination of damages following default, permits, but does not require, a hearing); *Bus. Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007 (JGK) (RWL), 2023 WL 1809707, at *5 (S.D.N.Y. Feb. 8, 2023) (holding that no hearing on damages is necessary when no party requests one).

None of the parties has requested a hearing. I have therefore conducted the inquest based on the well-supported factual statements contained in the PFOF and supporting submissions, which provide a sufficient basis on which to make a damages calculation. *See De Lage Landen Fin. Servs., Inc. v. Universal Wilde, Inc.*, No. 19-CV-1371 (AT) (SDA), 2019 WL 4195441, at *3 n.2 (S.D.N.Y. Aug. 15, 2019) (finding that an inquest hearing was not required because the plaintiff's sworn declarations provided a sufficient basis for calculating damages), *report and recommendation adopted*, 2019 WL 4194574 (S.D.N.Y. Sep. 3, 2019); *see also Lopez v. Emerald Staffing*, No. 18-CV-2788 (SLC), 2020 WL 915821, at *1 n.1 (S.D.N.Y. Feb. 26, 2020) (relying on and accepting as true facts from the plaintiffs' declarations and the plaintiffs' complaint) (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).

9

**DISCUSSION**

**I.    Jurisdiction and Venue**

Because Plaintiffs brought this action under ERISA and the LMRA, subject matter jurisdiction is properly based on 28 U.S.C §1331 (federal question jurisdiction), ERISA § 502(e)(1), which grants federal district courts exclusive jurisdiction over civil actions brought by ERISA participants or beneficiaries (29 U.S.C §1132), and 29 U.S.C § 185(c).

As a prerequisite to exercising personal jurisdiction over a defendant, the "procedural requirement of service of summons must be satisfied." *Reilly v. Com.*, No. 15-CV-5118 (PAE) (BCM), 2016 WL 6837895, at *3 (S.D.N.Y. Oct. 31, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 160884 (S.D.N.Y. Nov. 21, 2016). "Where the defendant has defaulted, the plaintiff must establish adequate service in order to obtain a default judgment." *Id.*; *see also Lliviganay v. Cipriani 110 LLC*, No. 09-CV-0737 (LAK), 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (holding that lack of proof of proper service "is an independent obstacle to a default judgment"). The record reflects adequate service of process of all required documents. (*See* ECF 8, Aff. of Serv. on G&S; ECF 12, Aff. of Serv. on Prime.)

Defendants Prime and G&S are organized under the laws of the state of New Jersey and maintain their principal places of business in New Jersey. (*See* ECF 45, PFOF ¶¶ 4-5.) This Court has personal jurisdiction over Defendants pursuant to CPLR § 302(a)(2) and 29 U.S.C. § 1132(e)(2). Under ERISA Section 502(e)(2), district courts may exercise personal jurisdiction over defendants who may be found within the district, and process may be served anywhere in the United States. *See* 29 U.S.C. § 1132(e)(2). Defendants are found in this District, as they

10

performed the Covered Work in the District and were obligated to remit contributions to Funds based in New York. (*See* ECF 45, PFOF ¶¶ 6-9.)

Additionally, New York's long-arm statute permits jurisdiction over non-domiciliaries that transact business within the state. *See* CPLR § 302(a)(2). Defendants have sufficient minimum contacts with New York to satisfy due process requirements, as they were bound by a collective bargaining agreement with the Union, performed the Covered Work in New York, and were obligated to remit contributions to Funds based in New York. (*See* ECF 45, PFOF ¶¶ 6-9.) These contacts demonstrate that Defendants purposefully availed themselves of the privilege of conducting activities within New York, which allows this Court to exercise personal jurisdiction over them. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (holding that a defendant must purposefully avail itself of conducting activities within the forum state, invoking its benefits and protections, such that it could reasonably foresee being hauled into court there).

The general venue provision states that a civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; or "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"; or "(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Venue is proper in this District pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), Section 301 of the LMRA, 29 U.S.C. § 185, and the general federal venue statute, 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to Plaintiffs' claims occurred in this

11

District. Covered Work was completed in this District (*see* ECF 45, PFOF ¶¶ 6-7; *see also* ECF 32-2, CBA Art. IX), which obligated Defendants to make payments to the ERISA Funds, the Charity Fund, and the CCA, which maintain their principal places of business in this District and which are administered here. (*See* ECF 1, Compl. ¶¶ 4-6; ECF 45, PFOF ¶¶ 1-3.)

**II.    Liability**

### A.    ERISA Elements

Plaintiffs have pleaded facts sufficient to establish Defendants' liability with respect to their ERISA claim. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions . . . under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. When an employer is found to violate Section 515, it is liable for unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorneys' fees and costs of the action, and such other legal or equitable relief as the Court deems appropriate. *See* 29 U.S.C. § 1132(g)(2).

Plaintiffs have pleaded that Prime violated ERISA by alleging that: (1) at all relevant times, Prime was bound by the terms of the CBA; (2) under the CBA, Prime was required to remit benefit contributions to the Funds at hourly rates for Covered Work as specified in the CBA; and (3) an audit of Prime's books for the period of December 28, 2020 to December 25, 2022 identified $479,419.05 in delinquent contributions. (*See* ECF 1, Compl. ¶¶ 9-17.) Plaintiffs have also pleaded that, at all relevant times, Defendants were "alter egos, successors, and/or constitute a single employer" and therefore are bound by the CBA. (*See* ECF 1, Compl. ¶¶ 27-39; *see also* ECF 32-2, CBA Art. X § 1.) Prime and G&S "operated as a single, integrated

12

employer, with interrelation of operations, common management, and centralized control of labor relations," including but not limited to related management, shared employees, shared worker's compensation insurance overage through 2022, shared customers, shared contact information, and shared work. (*See* ECF 1, Compl. ¶¶ 27-39; ECF 45, PFOF ¶¶ 43-49.)

Based on the allegations in the Complaint and Defendants' failure to appear in this action, Plaintiffs have sufficiently established Defendants' liability under ERISA. *See Ferrara v. PJF Trucking LLC*, No. 13-CV-7191, 2014 WL 4725494, at *5 (E.D.N.Y. Sept. 22, 2014) ("A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true."); *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Ogee Constr., LLC*, No. 17-CV-8207 (LTS) (BCM), 2018 WL 5886441, at *2 (S.D.N.Y. Nov. 9, 2018) (granting default judgement in favor of the plaintiff); *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. NYC Flooring LLC*, No. 19-CV-6441 (LJL), 2022 WL 1665130, at *1 (S.D.N.Y. May 25, 2022) (same).

B.    Default Judgment

A defendant's default is deemed "a concession of all well- pleaded allegations of liability," *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015). If the Court finds the well pleaded allegations establish liability, the Court analyzes "whether Plaintiff has provided adequate support for the relief it seeks." *Gucci Am.,*

13

*Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, "even if the post-default inquest submissions supply the missing information." *Lopez*, 2020 WL 915821, at *4.

Plaintiffs have sufficiently pleaded Defendant' liability, *see supra* Part II.A, and Your Honor found that Plaintiffs stated claims against Defendants under Section 515 of ERISA, 29 U.S.C. § 1145, and Section 301 of the LMRA, 29 U.S.C. § 185; Your Honor further concluded that Defendants are alter egos such that both are bound by the CBA and jointly and severally liable for each other's obligations under the CBA and ERISA. (ECF 42, Def. J. Order at 1-2.)

**III.    Damages**

A.    <u>Evidentiary Basis</u>

The Court must determine whether Plaintiffs provided sufficient evidence to support their claimed damages. *See Transatlantic Marine*, 109 F.3d at 111; *Bleecker v. Zetian Sys., Inc.*, No. 12-CV-2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013). Plaintiffs filed their PFOF detailing benefits, contributions, and liquidated damages owed to them. (*See generally* ECF 45, PFOF.) Defendants have not responded to the Court's orders or Plaintiffs' application for a default judgment. Defendants have also not provided any contrary evidence on the amount of damages owed to Plaintiffs. I therefore conclude that Plaintiffs have met their evidentiary burden of proving damages. I further conclude that an in-person hearing is unnecessary, because Plaintiffs submissions provide a sufficient basis for evaluating the fairness of the damages request. *See, e.g.*, *Ogee*, 2018 WL 5886441, at *1-2 (finding that the plaintiffs had met their evidentiary burden in demonstrating damages during a damages inquest

14

following a default on a claim of ERISA violations); *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Shorecon-NY, Inc.*, No. 17-CV-5210 (RA), 2020 WL 3962127, at *3 (S.D.N.Y. July 13, 2020) (same).

B.    Damages in Connection with the Prime Judgment

The Prime Judgment was for $649,874.63, plus post-judgment interest at the statutory rate. (*See* ECF 34, First Moosnick Decl. ¶ 5; ECF 34-1, Order and J.) On January 23, 2025, Defendants paid Plaintiffs $37,307.71, leaving a balance of $612,566.92. (*See* ECF 45, PFOF ¶ 60.)[4] Plaintiffs request "the remaining balance" of the Prime Judgement and have provided evidence to support that claim. (*See* ECF 45, PFOF ¶¶ 60, 95-96; *see also* ECF 34, First Moosnick Decl. ¶ 10.)[5] Accordingly, Plaintiffs are entitled to an award of **$612,566.92** in damages.

C.    Attorney's Fees

In *New York State Association for Retarded Children, Inc. v. Carey*, the Second Circuit held that a party seeking an award of attorneys' fees must support the request with contemporaneous time records that show "for each attorney, the date, the hours expended,

---

[4]    Plaintiffs' PFOF contains a minor discrepancy (six cents) in the remaining balance owed under the 2024 Judgment. (*See* ECF 45, PFOF ¶¶ 60, 95.) I am satisfied that the remaining balance under the Prime Judgment after the $37,307.71 payment is $612,556.92. (*See* ECF 34, First Moosnick Decl. ¶¶ 9-10.)

[5]    Although the Prime Judgment included an award of post-judgment interest at the statutory rate, Plaintiffs have not sought post-judgement interest accruing from the date of the Prime Judgement. (*See* ECF 45, PFOF ¶¶ 60, 95-96; *see also* ECF 34, First Moosnick Decl. ¶ 10.) Nor have Plaintiffs provided any calculations of the amount of post-judgment interest that has accrued after issuance of the Prime Judgment. (*See* ECF 45, PFOF ¶¶ 60, 95-96; *see also* ECF 34, First Moosnick Decl. ¶ 10.)

and the nature of the work done." 711 F.2d 1136, 1148 (2d Cir. 1983). In *Cruz v. Local Union No. 3, International Brotherhood of Electrical Workers*, however, the Second Circuit accepted a "typed listing of [attorneys'] hours from their computer records" in lieu of contemporaneous records, where the record showed that the attorneys "made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records." 34 F.3d 1148, 1160 (2d Cir. 1994).

Plaintiffs' counsel submitted a billing history identifying the dates on which each employee worked on this case, the specific nature of the work conducted, and the amount of time spent. (*See* ECF 46-1, Billing Hist.) In light of the Second Circuit's holding in *Cruz,* Plaintiff's proof is sufficient to support their request for attorneys' fees. *See Johnson v. Kay*, 742 F. Supp. 822, 837 (S.D.N.Y. 1990) ("Where the attorneys have provided the court with affidavits that have been reconstructed from contemporaneous records and that set forth all charges with specificity, fees have not been denied.").

1. Requested Attorneys' Fees

Plaintiffs seek $22,536.20 in attorneys' fees. (*See* ECF 46, Second Moosnick Decl. ¶ 19.) Specifically, Plaintiffs seek $6,197.00 for work by lead counsel, $13,698.00 for associates' work, and $2,575.30 for non-attorneys' work. (*See id*. ¶¶ 14-17.) One timekeeper for whom no biographical information was provided billed $43.00 on this matter. (*See id*. ¶ 17.) I exclude that amount because of the absence of any information about the timekeeper.[6]

---

[6]    Where the requesting party fails to provide satisfactory evidence to support their hourly rates, courts have reduced fee awards, and in some instances, refused to award fees altogether. *See, e.g., Zero Carbon Holdings, LLC v. Aspiration Partners, Inc.,* 23-CV-5262 (LJL), 2024 WL 3409278, at *7 (S.D.N.Y. July 15, 2024) (refusing to award attorneys' fees for the three

2. Reasonableness of Counsel's Hourly Rates

An attorney's reasonable hourly rate is determined according to "the prevailing rates in the community for similar services by lawyers with similar skill, experience, and reputation." *Sullivan as Tr. of Stone Setters Local 84 Pension Fund, Annuity Fund, Vacation Fund, Apprentice Fund, & Indus. Promotion Fund v. Prestige Stone & Pavers Corp.*, No. 16-CV-3348 (AT) (DF), 2020 WL 2859006, at *11 (S.D.N.Y. Feb. 4, 2020), *adopted by* 2020 WL 1528117 (Mar. 30, 2020); *see also CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 342 F.R.D 84, 88 (S.D.N.Y. 2022). In determining whether the hourly rates requested by a party are reasonable, courts conduct a case-specific inquiry. *See Danaher Corp v. Travelers Indem. Co.*, No. 10-CV-0121 (JPO) (JCF), 2014 WL 4898754, at *2 (S.D.N.Y. Sept. 30, 2014). The requesting party must provide evidence that the requested rates are in line with those prevailing in the community, including but not limited to the firm's customary rates, the amount actually paid by clients, the years and types of experience of particular attorneys, and the nature and difficulty of the case or question presented. *See id.* at *2-3; *see also Wells Fargo Trust Co., N.A. v. Fast Colombia S.A.S.,* No. 23-CV-603 (PGG) (RWL), 2023 WL 8591953 at *6 (S.D.N.Y. Oct. 16, 2023) (discussing the various types of evidence courts consider when assessing the reasonableness of hourly rates), *adopted by* 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023). Although courts may take "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates in the prevailing district," the requesting party must furnish the court with evidence to support their specific

partners and two counsel about whom the requesting party provided no background information or any justification for their involvement when there were other lawyers who had previously been staffed on the matter).

hourly rates and their attorneys' fees requests. *See Danaher Corp.*, 2014 WL 4898754 at *2 (quoting *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005)).

Plaintiff's counsel provided biographies of the partners, associates and paralegals and comparable non-lawyers indicating how many years of experience each person has in handling ERISA and LMRA actions. (*See generally* ECF 46, Second Moosnick Decl.) Plaintiff's lead counsel, Maura Moosnick, is a partner at a firm specializing in labor and employment law. She is a 2021 law school graduate who worked for her firm as a legal assistant before law school. (*See id*. ¶ 14.) Her hourly rate of $410 for work before January 1, 2025 and $430 for subsequent work (*id*.) is at the high end of the range of hourly rates approved by Courts in this Circuit for partners in ERISA and LMRA actions, particularly since she appears to be a partner of very recent vintage. *See, e.g., Newman v. ASA Coll., Inc.*, 754 F. Supp. 3d 521, 546 (S.D.N.Y. 2024) (approving a rate of $400 per hour for a non-equity partner with 11 years of experience, consistent with the upper range of prevailing rates for experienced litigators in this district); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Architectural Metal Concept LLC*, 636 F. Supp. 3d 459, 467 (S.D.N.Y. 2022) (approving a rate of $350 per hour for a founding partner with over 25 years of ERISA litigation experience as reasonable); *N.Y.C. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (finding a partner rate of $425 per hour reasonable in an ERISA/LMRA action). However, another Court in this District has approved her 2025 hourly rate as reasonable. *See Trs. of the New York City Dist. Council of Carpenters Pension Fund v. AAA Windows & Doors Corp.,* No. 25-CV-2646-GHW, 2025 WL 1898539, at *7 (S.D.N.Y. July 8, 2025). I conclude that the rate is reasonable.

Associate Lillianna Iorfino is a 2021 law school graduate with a pre-2025 hourly billing rate of $310 and an hourly rate of $325 thereafter. (*See* ECF 46, Second Moosnick Decl. ¶ 15.) Her billing is at or slightly above the high end of the customary range for associates in ERISA/LMRA matters. *See, e.g., Wine, Liquor & Distillery Workers' Union, UFCW Loc. 1-D Pension Fund v. Sherry-Lehmann, Inc.*, No. 24-CV-4945 (LGS) (SN), 2025 WL 1167023, at *5 (S.D.N.Y. Feb. 27, 2025) (approving and hourly rate of $300.00 for junior associate with less than three years of experience); *2BJ N. Pension Fund v. Sedgwick & N. Halls Housing Development Fund Co., Inc.*, 24-cv-3674 (VSB) (HJR), 2025 WL 37563, at *5 (S.D.N.Y. Jan. 6, 2025) ("Courts in this district have . . . awarded rates between $250.00 and $350.00 for associates with approximately five years of experience."); *Knox v. John Varvatos Enters.*, 520 F. Supp. 3d 331, 342 (S.D.N.Y. 2021) (noting that less experienced attorneys are commonly awarded fees of $200 to $275 per hour); *Perimeter Interiors*, 657 F. Supp. 2d at 424 (approving an hourly associate rate of $300 per hour in ERISA cases). However, at least one Court in this District has approved her 2025 hourly rate as reasonable. *See AAA Windows & Doors*, 2025 WL 1898539, at *7. I conclude that the rate is reasonable.

Operations Director Eva Keating, a 2014 college graduate who was formerly a senior paralegal at her firm, had hourly rates of $155 and $163. (*See* ECF 46, Moosnick Decl. ¶ 16.) Abigail Frankel, a paralegal who graduated college in 2021 had the same hourly rates. (*See id*. ¶ 17.) These rates are slightly higher than the customary range for paralegal hourly rates in this Circuit. *See Architectural Metal Concept*, 636 F. Supp. 3d at 467 (approving a rate of $120 per hour for legal assistants as consistent with the range of $100 to $150 per hour recognized as reasonable for paralegal work in this Circuit). However, Courts in this District have approved

19

their 2025 hourly rates in prior litigation. *See AAA Windows & Doors Corp.*, 2025 WL 1898539, at \*7 (approving the requested 2025 hourly rate of $163 per hour for legal assistants at the same firm); *see also Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Minelli Constr. Co.,* No. 25-CV-1036 (GHW), 2025 WL 1360452, at \*7 (S.D.N.Y. May 7, 2025) (approving the requested 2024 hourly rate of $155 and the requested 2025 hourly rate of $163); *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Prime Contractors, Inc.,* No. 23-CV-0872 (PAE), 2023 WL 2823020, at \*4 (S.D.N.Y. Apr. 7, 2023) (finding legal assistant rates of $155 per hour to be reasonable). I conclude these rates are reasonable.

3. Reasonableness of Hours Billed

In determining the reasonable number of hours worked, "[t]he Court should examine contemporaneous time records that identify, for each attorney, the hours expended on a task, with a view to the value of the work product of the specific expenditures to the client's case." *Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-7777 (JGK) (JLC), 2012 WL 3578781, at \*12 (S.D.N.Y. Aug. 2, 2012) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997)). The Court has discretion to reduce hours spent on the litigation, "as a practical means of trimming fat from a fee application," where it finds the hours are "excessive, redundant, or otherwise unnecessary." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).

When determining whether the hours expended on an ERISA default judgment action are reasonable, courts assess whether complexity of the action, the amount of work necessary, the experience of the attorneys and firms involved in ERISA litigation, and whether the hours

20

expended fall within the typical range for these kinds of cases. Courts in this Circuit have approved between 8 and 50 hours in connection with cases like this one. *See, e.g., Alston as Tr. of Loc. 272 Lab.-Mgmt. Fund v. Select Garages, LLC*, No. 24-CV-5439 (DEH) (SLC), 2025 WL 472581, at *8 (S.D.N.Y. Jan. 21, 2025) (noting that courts in this Circuit have found approximately 8 hours expended to be reasonable in a straightforward ERISA default judgment case), *report and recommendation adopted*, 2025 WL 580275 (S.D.N.Y. Feb. 21, 2025); *Alston as Tr. of The Loc. 272 Lab.-Mgmt. Pension Fund v. 1699 New York Ave Parking LLC*, No. 23-CV-6740 (JAV) (VF), 2025 WL 836720, at *8 (S.D.N.Y. Jan. 31, 2025) (finding 9.1 hours of time expended to be well within the range of hours approved by courts for ERISA default judgment actions), *report and recommendation adopted,* 2025 WL 1266893 (S.D.N.Y. May 1, 2025); *Cummings*, 2024 WL 68552, at *5 (finding 18.15 hours to be reasonable based on the work performed in support of the action); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Atl. Steel Sols., LLC,* No. 21-CV-2518 (CBA) (JRC), 2022 WL 4642735, at *11 (E.D.N.Y. Sept. 15, 2022) (finding 22.9 hours to be reasonable given that counsel had to prepare the complaint, default judgment motion, multiple detailed declarations, and review extensive records), *report and recommendation adopted,* 2022 WL 4662723 (E.D.N.Y. Sept. 30, 2022), *supplemented,* No. 21-CV-2518 (CBA) (JRC), 2022 WL 11727626 (E.D.N.Y. Oct. 20, 2022); *N.Y.C. Flooring*, 2022 WL 1665130, at *3 (S.D.N.Y. May 25, 2022) (collecting cases where reasonable time spent ranged from 12.4 to 30.35 hours); *Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, 401(k) Sav. Plan v. Temperini Mech. Inc.,* No. 18-CV-2596 (AMD) (LB), 2020 WL 571680, at *6 (E.D.N.Y. Jan. 13, 2020) (finding 49.8 hours expended to be reasonable for work including drafting the complaint

and an amended complaint, attending conferences, preparing of court documents, drafting

declarations, and preparing motion for a default judgment), *report and recommendation*

*adopted,* 2020 WL 565410, (E.D.N.Y. Feb. 5, 2020).

Counsel has brought many suits similar to this one in recent years. *See Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. New York City Acoustics, Inc.,* No. 25-CV-6296 (GHW), 2025 WL 3110469, at *7 (S.D.N.Y. Nov. 6, 2025); *AAA Windows & Doors,* 2025 WL 1898539, at *7; Minelli Constr.,* 2025 WL 1360452, at *7; *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Floor Expo, Ltd.,* No. 24-CV-6867 (GHW), 2025 WL 448646, at *5 (S.D.N.Y. Feb. 7, 2025). The lawyers on this matter worked 56.3 hours, and non-lawyers worked 17 hours, for a total of 73.3 hours. (*See* ECF 46, Moosnick Decl. ¶¶ 14-7, 19; ECF 46-1, Billing Hist.) This work involved research, drafting the complaint, serving Defendants, and submitting the necessary papers to secure a default and award of damages. (*See, e.g.,* ECF 15-16, 20, 22-24, 26-29, 32-37, 44-47.) These tasks were routine in an ERISA default judgment case. *See, e.g., Regimental Contracting,* 2023 WL 2969471, at *6; *Atl. Steel Sols.,* 2022 WL 4642735, at *11. The motion for a default judgment was unopposed. Six of Plaintiff's filings in connection with its effort to secure a default judgment had to be refiled due to docketing errors (*see* ECF 24-28, 30), which suggests a level of carelessness. *Trs. of the United Teamster Fund v. J.B. Tea Mufflers, Inc.*, No. 07-CV-1425 (SJ) (RML), 2008 WL 2114955, at *5 (E.D.N.Y. Apr. 23, 2008). Plaintiffs do not argue "that this case raised any unusual, complex, or novel issues of fact or law." *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund*

*v. B&L Moving & Installation, Inc.*, No. 16-CV-4734 (GBD) (JLC), 2017 WL 4277175, at *7 (S.D.N.Y. Sept. 26, 2017); *see also J.B. Tea Mufflers,* 2008 WL 2114955, at *5. Under the circumstances, the time billed is unreasonably high, as demonstrated by time billed and approved as reasonable in very similar matters.

Where the hours expended are excessive, Courts may apply an across-the-board reduction. *See, e.g., Alston as Tr. of Loc. 272 Lab. Mgmt. Pension Fund v. Nagle Parking Inc.,* No. 23-CV-1739 (PAE), 2023 WL 4157186, at *4 (S.D.N.Y. June 23, 2023) (reducing an attorneys' fee award by 50% where the Court found 17.20 hours excessive in a straightforward ERISA default judgment action); *B&L Moving & Installation, Inc.,* 2017 WL 4277175, at *8 (finding 60.7 hours expended excessive and applying a 50% reduction), *report and recommendation adopted,* 2018 WL 705316 (S.D.N.Y. Feb. 5, 2018); *J.B. Tea Mufflers, Inc.*, 2008 WL 2114955, at *5 (finding 49.8 total hours excessive in a mostly routine default ERISA/LMRA fund collection case proceeding to a damages inquest where the motion was unopposed and the activities on the docket sheet were not complex, and applying a 50% reduction).

In light of the foregoing considerations, I respectfully recommend applying a 50% reduction in hours, as reflected in the chart below:

23

| ATTORNEYS' FEES | | | | | | |
|---|---|---|---|---|---|---|
| Timekeeper | Position | Hourly Rate | Hours Billed | Requested Fee (Hourly Rate x Hours Billed) | Reasonable Hours (.5 x Hours Billed)[7] | Reasonable Fee (Hourly Rate x Reasonable Hours) |
| Eva Keating | Operations Director | $155.00 | 3.7 | $573.50 | 1.9 | $294.50 |
| | | $163.00 | 2.4 | $391.20 | 1.2 | $195.60 |
| Maura Moosnick | Partner | $410.00 | 6.2 | $2,542.00 | 3.1 | $1,271.00 |
| | | $430.00 | 8.5 | $3,655.00 | 4.3 | $1,849.00 |
| Abigail Frankel | Paralegal | $155.00 | 6.5 | $1,007.50 | 3.3 | $511.50 |
| | | $163.00 | 3.7 | $603.10 | 1.9 | $309.70 |
| Lillianna Iorfino | Associate | $310.00 | 1.1 | $341.00 | 0.6 | $186.00 |
| | | $325.00 | 42.1 | $13,357.60 | 20.6 | $6,695.00 |
| TOTAL | | | 73.2 | $22,470.80 | 36.6 | $11,312.30 |

4.  Additional Costs

I turn to Plaintiff's request for reimbursement of $756.36 in costs, consisting of: (1) the filing fee of $405.00; (2) service of process fees of $321.65; (3) postage costs of $8.02; and (4) research fees of $21.69. (*See* ECF 36, Statement of Damages; ECF 46-2, Receipts.) ERISA provides for reimbursement of costs when "a judgment in favor of the [retirement] plan is awarded[.]" 29 U.S.C. § 1132(g)(2)(D); *see also Finkel v. Detore Elec. Constr. Co.*, No. 11-CV-0814 (ENV) (RER), 2012 WL 1077796, at *12 (E.D.N.Y. Mar. 6, 2012) ("An award of reasonable costs is mandatory in a successful action to recover delinquent contributions[.]"). "These costs may include photocopying, travel, telephone costs . . . as well as filing fees and reasonable process-server fees." *Cummings*, 2024 WL 68552, at *5. "As with attorneys' fees, [a] requesting party

---

[7]    These figures are rounded to the nearest tenth of an hour.

must substantiate [its] request for costs." *Guo v. Tommy's Sushi, Inc.*, No. 14-CV-3964 (PAE), 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016).

Counsel has documented these costs. (*See* ECF 36, Statement of Damages; ECF 46-2, Receipts.) This record is sufficient to support the request for reimbursement. *See RSS WFCM2018-C44-NY LOD, LLC v. 1442 Lexington Operating DE LLC*, No. 21-CV-4424 (DLC) (VF), 2024 WL 4486058, at *7 (S.D.N.Y. Aug. 19, 2024) (finding that the plaintiff's counsel's contemporaneous billing records and supporting sworn declaration were sufficient to support the request for reimbursement). I therefore respectfully recommend that Plaintiffs be awarded **$756.36** in legal costs, for a total of **$12,068.66** in attorneys' fees and costs.

5.  Post-Judgment Interest

Post-judgment interest is mandatory in federal civil actions: "[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Accordingly, post-judgment interest should be granted to Plaintiffs and calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered. *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) (holding that post-judgment interest is mandatory and calculated pursuant to federal statute); *B&L Moving & Installation, Inc.,* 2017 WL 4277175, at *8 (awarding post-judgment interest at the federal statutory rate in an ERISA default judgment action).

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Funds should be awarded **$624,635.58**, consisting of $**612,566.92** in damages, and **$12,068.66** in reasonable attorneys' fees and costs, plus post-judgment interest from the date of judgment, at the statutory rate. If Your Honor issues an order adopting this recommendation, I further respectfully recommend that Plaintiff be required to file a letter on the docket within seven days of any such order indicating whether they wish to withdraw their motion to compel an audit of G&S (ECF 48).

Dated: March 20, 2026
New York, NY

RESPECTFULLY SUBMITTED,

_____

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. Plaintiffs shall promptly serve a copy of this report and recommendation on Prime and G&S by mail and email at each Defendant's last known addresses and shall file proof of such service on the docket on the day such service is made. A party may respond to another party's objections

26

within fourteen days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2). Such

objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing

objections and responses to objections must be addressed to Judge Schofield.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF

OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).